THE STATE, EX REL. STUART, PROS. ATTY., v.
MEYER ET AL.

THE STATE, EX REL. STUART, PROS. ATTY., v. THE
TOLEDO MEMORIAL PARK & CEMETERY ASSOCIATION.

*Cemeteries—Person or association of persons may operate for
profit, when—Legislative sanction unnecessary for indi-
vidual to engage in legitimate business.*

1. It is a fundamental principle of law that in the absence
of a statutory prohibition, an individual may engage in
and conduct any legitimate business without legislative
assent.

2. In Ohio a natural person or any association of them (not
a corporation) may own and operate a cemetery for profit,
subject to the regulations which may be enacted by the
state in the reasonable exercise of its police powers.

(Decided June 24, 1925.)

IN QUO WARRANTO.

*Mr. Roy R. Stuart,* prosecuting attorney; *Mr. H.
S. Commager,* assistant prosecuting attorney, and
*Mr. P. R. Taylor,* for plaintiff.
*Mr. Edward H. Ray,* for defendants.

PARDEE, P. J.   The foregoing are separate ac-
tions in *quo warranto,* instituted in this court, and,
while, under the law, they cannot be consolidated,
still they are so related that the evidence in one
case applies equally well to the other, and the evi-
dence was all taken at once by a special master ap-

[1] Constitutional Law, 12 C. J. § 459 (Anno.); [2] Ceme-
teries, 11 C. J. § 5.

pointed by this court, for which reasons both actions have been argued together and submitted to this court for consideration and final determination.

The plaintiff claims that the first of said actions, being No. 1409 in this court, is brought pursuant to subdivision 3 of Section 12303, General Code, which reads as follows:

"A civil action may be brought in the name of the state: * * *

"3. Against an association of persons who act as a corporation within this state without being legally incorporated."

The following violations of law by the defendant trustees are claimed by plaintiff:

1. That the powers they claim to exercise and are exercising, as shown in their declaration of trust of October 22, 1923, constitute an exercise of corporate powers.

2. That the trustees, without being incorporated, are assuming to exercise the franchises, rights, powers and privileges of a corporation organized for cemetery purposes.

3. That by virtue of an agreement with the Toledo Memorial Park and Cemetery Association, which is a corporation not for profit, organized for cemetery purposes under Sections 10093 to 10119, inclusive, General Code, these trustees are attempting to make a profit out of the sale of lots in a public cemetery in this state, and furthermore are conducting an intensive selling campaign for that purpose and inducing people to buy and hold lots for speculative purposes.

4. That these trustees, furthermore, by the same

agreement, have undertaken the actual management of the incorporated cemetery association, in that they are actually the fiscal and sales agents of the association, and have deprived the association of the care and custody of its funds.

5. That the trustees under the declaration of trust are issuing so-called certificates of shares of beneficial interest in the trust, principally to themselves, their relatives and friends, in very large amounts, which are in effect nothing but shares of corporate stock.

6. That the trustees assume the right to appoint their own successors without authority from the creator of the trust.

7. And generally that the so-called Massachusetts Trusts, when they attempt to authorize the exercise of such wide powers, are illegal in this state.

These propositions, the plaintiff says, may be condensed into the following three:

1. That the trustees of this trust are exercising corporate powers.

2. That these powers which they are exercising are vested exclusively in cemetery or municipal or township corporations, and religious and benevolent associations.

3. That acting in this manner the trustees are attempting to make a profit out of the sale of burial lots in a public cemetery.

As to the second suit, No. 1410, against the cemetery association, the plaintiff claims in substance that the defendant, a corporation not for profit, formed under the laws of Ohio as a cemetery association, is misusing its corporate authority, fran-

chises and privileges, in that it has entered into a contract with the trustees of the Development Trust Estate, so-called, the defendants in case No. 1409, whereby the latter are to do the work of laying out, improving and developing a tract of land for public cemetery purposes, and retain the entire proceeds of the sale of lots up to the sum of $75,000, and thereafter turn over for a permanent care fund the further proceeds of such sales in excess of $75,000 to the cemetery association to the extent of only twenty per cent. thereof, but in a sum not less than $3,000 per acre, the trust retaining all of the remainder as its profit. Further, that by this contract the trustees of the trust are the fiscal agents of the defendant association and also the association has agreed that it shall not have the custody of its own funds, to-wit, the permanent care fund, but that the same shall be placed in the custody of three trustees, one representing the association, one representing the trustees of the trust, and the third a trust company.

Although the petitions in both cases were filed January 22, 1924, and are based upon a declaration of trust dated June 1, 1922, and the agreement between said trustees and the cemetery association dated June 1, 1922, it appears from the record that a new declaration of trust was executed October 22, 1923, and a new agreement between the trustees and the cemetery association entered into on October 20, 1923, yet, as we understand it, these causes were presented and argued, and we are expected to decide them, upon the agreements as they now are, although there has been no amendment to the peti-

tions setting forth the new declaration of trust and the new agreement.

The facts in these cases are not in dispute, and the principal ones are substantially the following, to wit:

In the fall of 1921, one John B. Muth obtained a contract for the purchase of what is known as the Bay and Reger real property, located approximately six or seven miles west of the limits of the city of Toledo on the Monroe Street road, and just east of the village of Sylvania in Lucas county. Several individuals became interested with him in the purchase of this property and contributed to the purchase price thereof, and the title to the same was taken in the name of three individuals, as trustees. Afterwards the same parties obtained other contracts for other real estate adjoining the Bay and Reger property, the purchase price of which was furnished by said individuals, and the title taken in the name of the three trustees, who were to hold the same in trust, in compliance with a certain declaration of trust specified in the deeds.

The first declaration of trust relative to the property was made on or about the 1st day of June, 1922, and remained in effect until the 22d day of October, 1923, as hereinbefore indicated, when the same was supplanted by said new declaration of trust, under which the present trustees, the defendants in case No. 1409, have been operating. These trustees have been improving parts of said land, and after such improvements have been selling the same, under the contract hereinbefore referred to, to the Toledo Memorial Park & Cemetery Association, a cemetery corporation, incorporated un-

der the laws of Ohio not for profit, its articles of incorporation providing:

"*Third.* The purposes for which said corporation is formed is to establish, conduct and maintain a Burial Park and Cemetery for the burial of human remains and in which may be erected monuments and memorials in memory of deceased persons, and in pursuance of such purpose may take, own and hold property, real, personal or mixed, and enjoy all the usual, necessary and incidental rights and privileges of an association organized for the purposes above mentioned."

This association was fully organized and since its organization has been operating a public cemetery in a part of the real estate hereinbefore referred to.

At the time of the taking of the testimony in these cases the cemetery had sold 4,900 lots, and 1,195 bodies had been buried therein, and approximately 70 acres had been developed and platted into lots. The cemetery association had no money or property when it started; it now owns all of the roads throughout the cemetery, which are paved with macadam; it is equipped with waterworks and sewerage systems; it has a valuable administration building, and several parks fronting the highway, which comprise about nineteen acres of land, and many other and valuable improvements, the cost of which has been fully paid.

By the contract of October 20, 1923, the cemetery association, for a valuable consideration, acquired an option or right to purchase all the property owned by the trustees and herein referred to, at such time or times and in such parts or parcels as

it might desire, at a price to be agreed upon by its trustees and the trustees of said trust. Certain tracts have been conveyed to the association by said trustees as the association had sale for the lots contained therein. An intensive campaign has been carried on for the sale of the lots, written contracts of purchase have been signed by the purchasers, and when the lots have not been paid for at once these contracts have been assigned to the trust estate as a means of paying for the lots, and the cemetery has guaranteed payment thereof.

As desired, the land is taken over by the cemetery in sections, each section containing a certain number of lots, surrounded by roadways, walks, and so forth, and each lot has had a certain purchase price fixed upon it, the aggregate of which prices the cemetery association agreed to pay for the section. The trustees of the trust, or those interested therein, have no part in the management and operation of the cemetery association except such as they may acquire by being lot owners therein, and the cemetery association has no control over the trustees.

By the declaration of trust the trustees have absolute power over and control of the real estate deeded to them, and of the avails thereof, and in the exercise of such power they have a right to sell such real estate, or any part thereof, at such price and upon such terms and conditions as they may see fit, and in the exercise of such power and authority they have entered into the contract with the cemetery corporation as hereinbefore set forth. If vacancies occur among such trustees, by resigna-

tion or otherwise, the remaining trustees have full power and authority to appoint other trustees.

The several beneficiaries of the trust, now numbering about fifteen or sixteen, have their interest in the trust estate evidenced by receipts or certificates signed by the trustees, and said beneficiaries do not have any control over the property or the money realized therefrom except such as the trustees desire to give them in the net profits thereof. The interests in said trust may be passed from one to another by the assignment of these trust receipts or certificates, and upon these facts, and many more of minor importance, the questions arise, are the defendant trustees acting as a corporation without being legally incorporated? and, is said defendant corporation using its corporate authority, franchises and privileges contrary to and in violation of law?

In this state, three classes of corporations are authorized to acquire and hold land for cemetery purposes:

1.   A city or a village, for a municipal cemetery.

2.   The trustees of a township or townships, for a township or joint cemetery.

3.   A cemetery association incorporated under the laws of Ohio not for profit.

These three classes of corporations are expressly vested with the power of acquiring and holding lands for burial purposes, and without this express authority they would not have the power to do so.

But there does not seem to be any statute in this state which gives religious or benevolent societies the power to acquire and hold land for cemetery purposes, and the power in this class of

associations to acquire and hold land for such purposes is incidental to the purposes for which they are organized.

Prior to the year 1894, a corporation could not be organized in this state to buy and sell land, but since that year a corporation for profit to carry on such business has been expressly authorized.

On February 24, 1848 (46 O. L., 97), the General Assembly of the state of Ohio passed a general law making provision for the incorporation of cemetery associations, and on April 10, 1856 (53 O. L., 205), the General Assembly passed a law providing that any cemetery association theretofore incorporated, either by special or general act, could come under the act of February 24, 1848, by certain action taken by its trustees or directors, and by filing with the recorder a certificate of its intention so to do.

Both of these acts remained in full force and effect as separate laws until the general revision of the laws of this state by the General Assembly in the year 1880, which went into effect on January 1 of that year, and both of the foregoing being included in said revision were repealed by the General Assembly as of that date.

Prior to the codification of the year 1880, laws relative to cemetery corporations had not been included in the general corporation law of the state, but were so included under the codification of that year, and were put in Chapter 9 of Title II of Part 2 of said codification and became Sections 3571 to 3586, both inclusive, Revised Statutes, and laws relative to cemetery corporations are now to be found in Chapter 7, Division VI, Title IX, of part

2 of the General Code, and are Sections 10093 to 10119-1, both inclusive.

The plaintiff therefore claims that the three kinds of corporations hereinbefore stated, and purely religious and benevolent societies, are the only ones that have a right to hold the title to a cemetery, and that they and no others may sell lots therein, and that this has been made clear and certain by Section 3451, General Code, which reads as follows:

"The title, right of possession and control to and in all public graveyards and burial grounds located without the corporate limits of any city, or village, which have been set apart and dedicated as public graveyards or burial grounds, and grounds which have been used as such by the public, but not expressly dedicated, except such as are owned or under the care of a religious or benevolent society, or an incorporated company or association, or under the control of the authorities of any city, or village, shall, severally be vested in the trustees of the township where located."

This section means just what it says, and that is that public graveyards or burial grounds located without the limits of a city or village, and which have been set apart and dedicated by the owner to the public for such purpose, and grounds which have been used by the public for such purpose and not expressly dedicated by the owner, shall be under the control of the trustees of the township where located, and that such trustees shall have the title to such land and the right of possession and control; but this section does not mean that land which has been used for a graveyard or burial ground

and has not been dedicated by the owner to the public for such purpose, or used for a public graveyard or burial ground under such conditions and circumstances and for such a period of time as to amount to a dedication, shall belong to such township trustees, and the insertion in such law of the exception of cemeteries owned or under the care of a religious or benevolent society, or an incorporated company, is mere surplusage, because that would be the law without the exceptions being contained therein, as the Legislature could not take from the owners of property their title and right of possession without due process of law, irrespective of the use to which such property has been put by the owners thereof.

The Legislature in passing the several laws relating to the title and right of possession of burial grounds, within or without the limits of municipal corporations, simply recognized the common-law rule as to the dedication of land for a public use—whether such purpose be for a street, a road, a park, a burial ground, or what not—the common-law dedication being made in one of two ways: either by the lapse of sufficient time to prevent the recovery of such real estate, or by a shorter use of the real estate, coupled with acts, declarations or circumstances from which an express dedication may be shown or presumed. (*Lessee of Incorporated Village of Fulton* v. *Mehrenfeld,* 8 Ohio St., 440; *Penquite* v. *Lawrence,* 11 Ohio St., 274.)

When the country was new, the population sparse, and land cheap, owners frequently dedicated and set apart small pieces or tracts of land for public graveyards, which dedication and ac-

ceptance by the public for such purpose deprived the owner of his title in said land and constituted the same public property for such purpose, and frequently the owner of a small piece or tract of land, without express dedication for such purpose, would allow his neighbors and the public to use his land for a public graveyard, and after it had been used for the requisite period of time he was estopped to deny that the land thus appropriated and used was a public burying ground. Therefore the Legislature, in the year 1874, recognizing this situation throughout the limits of this state, thought it advisable that these public burying grounds outside of municipalities (similar provision as to those in municipalities having been made in the year 1869) should be under the control and management of the township trustees; and that was the reason this law was passed,—without any intention on the part of the Legislature to attempt to give to such trustees property used for this purpose which had not been dedicated to and used for a public purpose, but solely to give to someone the power, duty and authority where none existed before to look after and care for these neglected public places of burial.

The attorneys for the plaintiff also claim that Sections 4154, 4183 and 4187, General Code, sustain their contention that none but the foregoing three kinds of corporations, and religious and benevolent associations, are permitted to own or operate cemeteries within this state. But we are unable to agree with them in this respect, as the foregoing sections apply only to cemeteries owned either by a municipality or by two or more munic-

ipalities, or by such corporation or corporations, or the trustees of a township or townships. The sections of the Code cited and relied upon by plaintiff's attorneys therefore do not contain any prohibition, directly or by implication, which prevents others than the ones mentioned from owning land for cemetery purposes.

The Legislature has not only not seen fit to establish the public policy as claimed, but it has distinctly recognized, in several of the statutes of this state, the right of individuals to hold cemeteries and the lots therein with a view to profit. In the year 1852 (50 O. L., 137, Section 3), the Legislature passed a law which, without much change, is now Section 5350, General Code, and which reads as follows:

"Lands used exclusively as graveyards, or grounds for burying the dead, except such as are held by a person, company or corporation with a view to profit, or for the purpose of speculating in the sale thereof, shall be exempt from taxation."

The law hereinbefore referred to, which was passed in the year 1848, and which also contained what is now Section 10101, General Code, exempted from taxation, execution, attachment, or any other claim, lien or process whatever, a burial lot, if used exclusively for burial purposes and in no wise with a view to profit; and prior to said year, and after the year 1825 (23 O. L., 61, Section 2), all tracts of lands, with the improvements thereon, not exceeding fifteen acres (which acreage was reduced to ten acres in 1831), which were held for any religious society and occupied by such for the use of a meeting house or burying ground, were exempt

from taxation. Since the year 1835 (33 O. L., 11, now Section 10105, General Code), land appropriated and set apart as burial grounds, either for public or private use, or any burial ground that may have been used as such for fifteen years, has not been subject to sale on execution on a judgment, nor to taxation, dower or compulsory partition, provided such land does not exceed in value the sum of fifty dollars.

Not finding any legislative prohibition against others than those mentioned owning and operating cemeteries for profit, we must determine whether there is any public policy against the same being done by an individual or an association of them.

The first recorded purchase of land for purposes of burial is that of Abraham, about 1900 B. C. For 400 shekels of silver he purchased from the Sons of Heth a field containing a cave, and we are told that the field and the cave which was therein, and all the trees that were in the field, that were in all the borders round about, were made sure unto Abraham for a possession of a burying place where he might bury his dead. There were Abraham and his wife, Sarah, buried; also his son Isaac and his wife, Rebecca, and his grandson Jacob and his wife, Leah.

Therefore, from time immemorial, trafficking in real estate has been carried on, and in this part of our country the source of land titles is traced back to the federal government, which at an early date sold large tracts of land to individuals and others for valuable considerations. These purchasers in turn resold the same without let or hindrance. This land, having been surveyed and platted, with

the marvelous growth of our country has finally become populated, and now new uses and purposes have been found for the same. The original large tracts and sections have been, by gradual degrees, reduced to smaller tracts and parcels, and these have become adapted to the new uses and purposes of our present generation.

It is true, of course, that the legislative branch of our government, in the proper and reasonable exercise of its police powers, may and has passed certain regulations in regard to the use of land for cemetery purposes, but it nowhere has prohibited individuals, or an association of them, from devoting privately owned real estate to cemetery purposes, *and it is a fundamental principle of law, well recognized and fully established, that in the absence of a statutory prohibition, an individual may engage in and conduct any legitimate business without legislative assent.*

The fact that the Legislature has given the power to individuals to organize a corporation for any purpose for which natural persons may lawfully associate themselves (except for professional business), does not deprive natural persons of the rights which they previously possessed, nor militate against the use of the same by them, and in so doing the Legislature has given to corporations thus organized the right to conduct and operate any business which natural persons had a right to do, and not otherwise. The corporation law of this state therefore gives the right to individuals to organize and operate a cemetery corporation not for profit, which right a natural person always has had and still possesses, and the fact that this right

has also been given to corporations by the Legislature, does not thereby take such right away from natural persons.

Further, the Legislature has not yet seen fit to permit cemetery corporations to be organized for profit, but it likewise has not seen fit to prohibit individuals from exercising the natural rights which they have always had so to do, leaving the question whether they desire to engage in such business to be decided by the individuals themselves.

If the fact that the Legislature has seen fit to permit all kinds of corporations to be formed for all kinds of purposes would establish a public policy which would take from natural persons the rights which they had always formerly possessed, then little or no business could be done in this state by natural persons, except in the professions, because private and public corporations are now formed everywhere to do those things which formerly only natural persons did.

We are therefore unanimously of the opinion that a natural person, or an association of persons (not a corporation), may, subject to the regulations which have been passed by the Legislature of this state under its police power, own and operate a cemetery for a profit, or otherwise, as they may see fit.

In case No. 1409 the question at issue is: Are the defendant trustees an association of persons who are acting as a corporation without being legally incorporated? If they are such and so acting, then the prayer of the petition should be granted; but if not, then plaintiff has no cause of action and its petition should be dismissed.

Whether or not they are such an association of persons is a question of mixed law and fact, to be determined from the evidence and a construction of the declaration of trust dated October 22, 1923, under which they are now acting.

After a careful consideration of the evidence, which includes the declaration of trust, in connection with the laws of Ohio under which corporations are formed and for which they may be formed, we are unable to find that such trustees are an association of persons acting as a corporation without being legally incorporated, but find that they are exercising a natural right of buying and selling real estate, which right has always existed and been protected under the laws of Ohio.

And while it is undoubtedly true that natural persons exercise many of their natural rights in the same manner and form that corporations now do, as no other method is possible to be used by either, still this does not take away from such natural persons their right so to do, nor create them, where there is more than one so acting, an association of persons acting as a corporation without being legally incorporated. The fact is that corporations are exercising the rights given them by law in the same manner and form that natural persons do and had been doing long before corporations were known, and so long as there is no law which requires natural persons to assume the form of a corporation for certain purposes they may continue to do and perform their natural rights as they have always done.

In case No. 1410 the question at issue is whether or not the defendant cemetery association has mis-

used a franchise, privilege or right conferred upon it by law in entering into the contract of October 20, 1923, with the defendant trustees in case No. 1409, and carrying the same out; in other words, whether the contract of October 20, 1923, and the things done in pursuance thereof between said trustees and said association, are contrary to law, and especially a violation of the laws regulating cemetery corporations organized not for profit.

This is also a question of mixed law and fact, to be determined from the construction of said contract and the evidence introduced in relation thereto. After a careful consideration of the same, we do not find that the defendant cemetery association has misused a franchise, privilege or right conferred upon it by law, or has exercised the same in violation of law.

We are therefore unanimously of the opinion that the petition of the plaintiff in each case will have to be dismissed. A proper journal entry to that effect may be drawn, motions for new trials may be marked filed and overruled, and proper exceptions given to the plaintiff in each case.

*Petition in case No. 1409 dismissed.*

*Petition in case No. 1410 dismissed.*

WASHBURN and FUNK, JJ., concur.

Judges of the Ninth Appellate District, sitting in place of Judges RICHARDS, WILLIAMS and YOUNG, of the Sixth Appellate District.